# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

TERRY LANGSTON,

    Plaintiff,

v.

CENTER FOR FAMILY HEALTH,

    Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in this Complaint.

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff Terry Langston ("Plaintiff"), by and through his attorneys, HURWITZ LAW PLLC, and states the following:

### INTRODUCTION

1. This is the rare discrimination lawsuit where "smoking gun" evidence leaves zero doubt that Mr. Langston was terminated based on his race. In a span of a few days, Mr. Langston went from being the leading candidate to be selected as

1

the next Chief Executive Officer at the Center for Family Health to being fired without justification. Mr. Langston would soon learn that a board member told other directors that he would "do anything stop [Mr. Langston]" from being hired and proclaimed he wanted "the white woman CFO" to get the job. Mr. Langston was then immediately fired for allegedly overstating his job duties in his resume despite having been an exemplary employee for over nine years—a blatantly pretextual reason for termination.

## JURISDICTION AND PARTIES

2. Plaintiff is an individual residing in the City of Pleasant Lake, County of Jackson, State of Michigan.

3. Defendant is a Michigan domestic nonprofit corporation with its principal place of business in the City of Jackson, County of Jackson, State of Michigan.

4. Plaintiff's claims arise out of Defendant's violation of Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981; and Michigan's Elliot-Larsen Civil Rights Act (the "ELCRA"), M.C.L.A. § 37.1101, *et seq*.

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.A. § 1331 (federal question jurisdiction) and 28 U.S.C.A. § 1343(a)(4) (jurisdiction over civil rights claims). This Court also has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 over Plaintiff's state law claims.

6. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391 because it is the district in which Defendant's principal place of business is located and the district in which the events giving rise to Plaintiff's claims transpired.

7. The facts and unlawful employment practices within the meaning of Section 1981 and ELCRA giving rise to this Complaint occurred within the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

8. Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

9. Plaintiff is an African American male.

10. After serving as a consultant to Defendant for two years, Defendant hired Plaintiff full-time in 2013. Throughout his ensuing nine-year career with Defendant, Plaintiff would so excel that he earned multiple promotions before eventually emerging as one of three finalists for Defendant's next Chief Executive Officer.

11. Defendant promoted Plaintiff to Communications and Development Officer in 2016.

12. Defendant promoted Plaintiff to Director of Communication & Advocacy in 2018.

13. On May 17, 2022, just days after being selected as a finalist for CEO, Defendant abruptly terminated Plaintiff.

14. Had Mr. Langston been promoted to CEO, he would have supervised Interim CEO and Chief Operating Officer ("COO") Sara Benedetto and Chief Financial Officer ("CFO")/Human Resources Officer Rebecca Snow.

15. Upon information and belief, Ms. Benedetto and Ms. Snow embarked on a campaign to discredit and undermine Plaintiff's achievements thereby preventing Plaintiff from becoming Defendant's next CEO.

16. To select its next CEO, Defendant hired a search firm, Campbell & CFH, LP ("Campbell"), and created a "Search Committee" that included Board and Committee members.

17. Two internal candidates applied for CEO, Plaintiff and Ms. Snow.

18. After multiple phone screenings and interviews, Campbell and the Search Committee named Plaintiff as one of three finalists for the position of CEO.

19. Ms. Snow was not selected as a finalist.

20. Upon information and belief, all three finalists for CEO were men of color.

21. On May 5, 2022, Emily Thompson of Campbell sent Plaintiff an agenda for a Zoom interview with Defendant's directors that would occur on May 13, 2022.

22. Initially, the Directors conducting Plaintiff's interview were supposed to consist of Ms. Benedetto, Ms. Snow, Chief Medical Officer Dr. Rose Johnson, Dental Director Dr. Kathryn Thornton, and Director of Quality Assurance Kim Hinkle.

23. Ms. Thompson also notified Plaintiff that the Board Search Committee Chair, Jessica Embury, and Search Committee Member Randy Treacher would be present at the Zoom meeting to "facilitate" and "get the meeting started," however neither Mr. Treacher nor Ms. Embury would ask questions.

24. However, on May 11, 2022, just two days before Plaintiff's scheduled interview with Defendant's Directors, all three finalists for the CEO position received an "urgent" email from Colleen Rodgers of Campbell that the interview for the CEO position was cancelled.

25. Ms. Rodgers further indicated that although she did not know why the interview was cancelled, she would follow up with each of the three finalists with further clarification.

26. On May 12, 2022, one day after Plaintiff received word that his interview was cancelled, Plaintiff attempted to call Ms. Rodgers, but received no answer.

27. On May 13, 2022, Plaintiff left a message for Ms. Rodgers after calling once again.  Ms. Rodgers returned Plaintiff's call the same day and indicated to

Plaintiff that according to Ms. Benedetto, Defendant's Board of Directors terminated its contract with Campbell.

28. Unbeknownst to Plaintiff at the time, Defendant's Board of Directors had not in fact terminated its contract with Campbell.

29. Ms. Rodgers further advised Plaintiff that he should look for other employment opportunities because she believed that the search process would have to be redone.

30. Now distressed, Plaintiff sought feedback from Ms. Rodgers and other Campbell employees regarding his skillset, abilities, and general candidacy for the position of CEO.

31. Ms. Rogers noted that Campbell believed Plaintiff was "an outstanding person" who showed "through his experience and vision that [he]" possessed the necessary skills to move Defendant forward.

32. Ms. Rodgers further opined that Plaintiff is "transparent, genuine, connected his experiences, and spoke about how he could help engage employees and create better customer service."

33. Following his conversation with Ms. Rodgers, Plaintiff called Ms. Embury to discuss Defendant's decision to cancel the interview process.

34. Plaintiff was stunned to learn that Ms. Embury was "not aware that the full board approved" cancelling the search process.

6

35. On May 16, 2022, Plaintiff texted Ms. Benedetto requesting an FMLA protected medical leave beginning immediately.

36. Ms. Benedetto responded to Plaintiff's FMLA request by instructing Plaintiff to see her if he arrived to work by noon and to not participate in any meetings on his calendar.

37. At approximately 11:00 a.m., Plaintiff informed Ms. Benedetto via text message that he could not come into work, but would be in the next day, May 17, 2022.

38. Upon his return to work at 8:00 am on May 17, 2022, Ms. Benedetto instructed Plaintiff to meet her in the conference room.

39. Upon Plaintiff's arrival to the conference room at approximately 8:15 a.m. the morning of May 17, 2022, Ms. Benedetto abruptly terminated Plaintiff.

40. Ms. Benedetto informed Plaintiff that he was fired because she "and the other Directors have lost confidence in [Plaintiff's] ability to do the work."

41. Ms. Benedetto, while glancing at a disciplinary form, then proceeded to offer Plaintiff three additional baseless and pretextual reasons for his termination.

42. Ms. Benedetto indicated to Plaintiff that in addition to allegedly losing confidence in Plaintiff's ability to adequately perform, Plaintiff was being terminated for lying on his resume, lying about "sponsorships," and lying about an "an incident with a provider."

43. Plaintiff immediately denied each of Ms. Benedetto's accusations.

44. Nevertheless, Ms. Benedetto presented Plaintiff with an ultimatum – either Plaintiff resign, or face termination. Either way, Ms. Benedetto assured Plaintiff that he would receive a severance.

45. Ms. Snow was absent from the meeting. Instead, Defendant's HR Manager, Michelle Lutz, explained the severance package to Plaintiff.

46. Plaintiff indicated that he would not sign any severance offer without a review by his attorney, to which Defendant responded by having Plaintiff removed from Defendant's premises before Plaintiff could so much as gather his belongings.

47. Plaintiff had no prior history of company discipline prior to his termination.

48. Defendant's allegation that misrepresented his duties and work experience on his resume recently submitted to the search firm is baseless.

49. Plaintiff's resume accurately states that he led a "team of three in daily operations," despite Defendant's assertion to the contrary.

50. In fact, Plaintiff regularly provided oversight for three distinct consultants, Wildesign, which includes Adam and Mel Bice, PR Consultant Jenny Cochran, and Mike Ambs of RJM.

51. Plaintiff worked with all three of the above-mentioned consultants to oversee the daily communications and marketing for Defendant.

52. Plaintiff also supervised one full-time staff member responsible for Tours, the Ambassador Program, and supporting fundraising during his employment with Defendant.

53. Plaintiff made it clear to both the search firm and the search committee that he was responsible for consultants only during his interview process.

54. Defendant also alleges that Plaintiff falsely represented on his resume that he was involved in writing, submitting, and implementing Defendant's grants.

55. However, it is indisputable that Plaintiff's job as Director of Communications & Advocacy required his assistance in obtaining nonfederal grants and his participation in providing feedback for federal grants.

56. Defendant also allege that it terminated Plaintiff, in part, because Plaintiff lied about his role in securing sponsorship donations for Defendant.

57. However, Health plan representatives have confirmed in both phone calls and Zoom meetings that Plaintiff was working to invoice them prior to his termination.

58. Finally, Defendant alleged it terminated Plaintiff for lying about an "an incident with a provider."

59. Plaintiff did not lie about "an incident with a provider." Instead, he communicated the provider's concern to the interim CEO, who independently decided not to remedy the provider's concern.

60. After Plaintiff was terminated, Defendant raised another allegation that Plaintiff destroyed Defendant's computer files.

61. In fact, Plaintiff did not destroy computer files at any time, nor did Plaintiff have any reason to do so.

62. Following Plaintiff's termination, Plaintiff reached out to Defendant's Board Chair, Steven Hogwood, and other members of the Board who expressed their anger and frustration with the search process.

63. According to select Search Committee members, Mr. Treacher proclaimed to the Committee that Plaintiff was "unqualified" for the position of CEO and that "the white woman CFO [Ms. Snow]" was more qualified.

64. Mr. Treacher further asserted to Search Committee members that he would do anything in his power to prevent Plaintiff, whom he referred to as "the back guy," from becoming CEO.

65. Search Committee members also indicated to Plaintiff that several members requested that Mr. Treacher be removed from the Search Committee because he made several individuals feel "uncomfortable."

66. As has been confirmed to Plaintiff by several Board and Search Committee members, Defendant terminated Plaintiff for the sole reason that he is African American.

67. It is clear then that Mr. Treacher and others within Defendant's company did not want an African American to become the next CEO.

68. Defendant's proffered reasons for terminating Plaintiff were nothing more than pretextual excuses to prevent an African American, Plaintiff, from becoming the next CEO of Defendant's company.

## **COUNT I - DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

69. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

70. Plaintiff is a member of a protected class (African American).

71. During Plaintiff's employment with Defendant, Defendant violated Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of employment "as is enjoyed by white citizens," in violation of 42 U.S.C. § 1981(b), as amended.

72. Plaintiff was treated differently, discriminated against, denied the opportunity to advance, and eventually terminated entirely because of his race.

73. During his employment, Plaintiff did not enjoy the same benefits, privileges, terms, or conditions of employment as Defendant's white employees.

74. Defendant's treatment, practices, and policies directed toward Plaintiff denied Plaintiff the full and equal benefits of all laws and proceedings for the

security of persons and property "as enjoyed by white citizens," in violation of 42 U.S.C. § 1981, as amended.

75. Through Defendant's actions and treatment of Plaintiff, there is ample evidence that Defendant intended to discriminate against Plaintiff on the sole basis of Plaintiff's race.

### COUNT II - DISCRIMINATION IN VIOLATION OF ELCRA

76. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

77. Defendant employed Plaintiff within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2010 et seq. ("ELCRA").

78. Defendant is an employer within the meaning of ELCRA.

79. ELCRA prohibits, among other things, discrimination based upon race.

80. In addition to Plaintiff being qualified for the position he held at the time of his termination; Plaintiff was also extremely qualified to be Defendant's next CEO.

81. Defendant held Plaintiff to a different standard than his white colleagues.

82. Plaintiff suffered adverse actions, including failure to promote and termination, while similar-performing white employees were retained and promoted.

83. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff was harmed, and continues to be harmed, in that he has suffered economic and non-economic loss, including but not limited to: lost wages; damages to professional reputation; emotional distress; outrage, humiliation; indignity and disappointment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A. Judgment against Defendant in the amount of Plaintiff's unpaid back pay, front pay, injunctive relief, declaratory judgment, liquidated damages, punitive damages, and attorney fees under Section 1981 and ELCRA.

B. Award Plaintiff appropriate equitable relief, compensatory damages, and exemplary damages;

C. Appropriate civil penalties;

D. All costs, attorneys' fees, and interest incurred prosecuting this claim; and

E. All further relief as the Court deems just and equitable.

> Respectfully submitted
> Hurwitz Law, PLLC
>
>    /s/ Noah S. Hurwitz
> Noah S. Hurwitz (P74063)
> Attorney for Plaintiffs

Dated: August 12, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TERRY LANGSTON | Case No. |
| Plaintiff, | Hon. |
| v. | |
| CENTER FOR FAMILY HEALTH, | |
| Defendant. | |

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

## **JURY DEMAND**

NOW COMES Plaintiff Terry Langston, by and through his attorneys, HURWITZ LAW, PLLC, and hereby demands a trial by jury of the issues in the above-captioned cause of action.

Respectfully submitted
NACHTLAW, P.C.

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Dated: August 12, 2022         Attorney for Plaintiffs

14