**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TERRY LANGSTON,

Plaintiff,

v.

CENTER FOR FAMILY HEALTH,

Defendant.

Case No. 22-cv-11883

Hon. Terence G. Berg

---

**PLAINTIFF'S MOTION FOR SANCTIONS**
**BASED ON DEFENDANT'S SPOLIATION OF EVIDENCE**

NOW COMES Plaintiff Terry Langston, by and through his counsel, Hurwitz Law PLLC, and for the reasons set out more fully in the concurrently filed Brief in Support of the Defendant's Motion for Sanctions Based on Defendant's Spoliation of Evidence, Plaintiff respectfully requests that this Court grant Plaintiff's motion, sanction Defendant in the manner prescribed below, and grant all other and further relief as this Court deems just and appropriate.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104

(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

Dated: June 26, 2023

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TERRY LANGSTON,

Plaintiff, Case No. 22-cv-11883

v. Hon. Terence G. Berg

CENTER FOR FAMILY HEALTH,

Defendant.

---

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS BASED ON DEFENDANT'S SPOLIATION OF EVIDENCE**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ iii

**INDEX OF EXHIBITS** ........ iv

**INTRODUCTION** ........ iv

**BACKGROUND** ........ 1

**ARGUMENT** ........ 2

**I. DEFENDANT NEVER INSTRUCTED BOARD MEMBERS TO PRESERVE EVIDENCE AND CAUSED THE DESTRUCTION OF HIGHLY RELEVENT ELECTRONIC COMMUNICATIONS.** ........ 2

**II. TREACHER DESTROYED ELECTRONIC COMMUNICATIONS WITH BENEDETTO AND SNOW.** ........ 5

**III. DEFENDANT PATENTLY LIED ABOUT SNOW'S INVOLVEMENT IN PLAINTIFF'S TERMINATION AND PRODUCED A DISTORTED "SMOKING GUN" EMAIL TO CONCEAL EVIDENCE.** ........ 7

**IV. SANCTIONS ARE WARRANTED.** ........ 9

# TABLE OF AUTHORITIES

Cases

*Applebaum v. Target Corp.*, 831 F.3d 740 (6th Cir. 2016) ....................................... 9
*John B. v. Goetz*, 879 F. Supp. 2d 787 (M.D. Tenn. 2010) ....................................... 5
*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065 (6th Cir. 2014) ....................................... 9

**INDEX OF EXHIBITS**

1. Randy Treacher Deposition Testimony Index
2. Rebecca Snow Deposition Testimony Index
3. Sara Benedetto Deposition Testimony Index
4. Steven Hogwood Deposition Testimony Index
5. Jessica Embury Deposition Testimony Index
6. Theodore Hilleary Deposition Testimony Index
7. Dale Moretz Deposition Testimony Index
8. June 8, 2022 Litigation Hold Correspondence
9. Defendant's Original Responses to Plaintiff's Document Requests
10. Defendant's Board of Directors Directory
11. Randy Treacher's Text Messages with Sara Benedetto
12. Randy Treacher's Text Messages with Rebecca Snow
13. March 1, 2023 Deficiency Letter
14. March 6, 2023 Email
15. Defendant's Second Supplemental Responses to Document Requests
16. March 8, 2023 Email
17. April 19, 2023 Email
18. June 23, 2023 Email
19. Defendant's Supplemental Interrogatory Responses
20. May 15, 2022 "draft discussion summary" Email
21. Sara Benedetto's Written Timeline of Plaintiff's Termination

## INTRODUCTION

On June 23, 2023, this Court permitted Plaintiff "to file a motion re spoliation by June 26, 2023 . . . Briefing is limited to 10 pages." Limited to 10 pages, Plaintiff will construct through deposition testimony a factual predicate for this Court to levy severe sanctions against Defendant based on intentional spoliation of evidence. This is not hyperbole. Executives and Board members controlled by Defendant testified that (a) they were never told to preserve or locate evidence; and (b) that evidence probative of whether Plaintiff was discriminated against based on his race and gender has been destroyed.

## BACKGROUND

Plaintiff's race and gender discrimination[1] claims arise from his application for Defendant's vacant CEO position and subsequent shocking termination shortly after being named as a finalist for that position. Factual issues of discrimination abound in this terribly contentious dispute in which several members of Defendant's own Board of Directors have testified that the decision to terminate Plaintiff was "discriminatory." Board Treasurer Randy Treacher, Chief Financial Officer Rebecca Snow, and Chief Operational Officer Sara Benedetto have all been implicated by their colleagues and members of Defendant's CEO Search Committee

[1] Plaintiff moved to amend his complaint on March 30, 2023 [ECF No. 10] to include a gender discrimination claim and that Motion is still pending before the Court.

for terminating Plaintiff with discriminatory intent. Critical witnesses have testified that (a) Plaintiff was treated differently and terminated because of his race; (b) the termination reasons are pretextual; and (c) there was "collusion" between Mr. Treacher and Executives to place Ms. Snow in the CEO position instead of Plaintiff. *See* **Exs. 1-7,** Deposition Testimony Indexes for (1) Treacher, (2) Snow, (3) Benedetto, (4) Hogwood, (5) Embury, (6) Hilleary, and (7) Moretz. However, it is not the discrimination testimony that bears examination at this time. Instead, Plaintiff will set forth facts establishing that Defendant took no effort to apprise its organization of its duty to preserve evidence and, as a result of Defendant's neglect, critical evidence has been destroyed.

## ARGUMENT

### I. DEFENDANT NEVER INSTRUCTED BOARD MEMBERS TO PRESERVE EVIDENCE AND CAUSED THE DESTRUCTION OF HIGHLY RELEVENT ELECTRONIC COMMUNICATIONS.

Defendant's evidence preservation duty was triggered at least by June 7, 2022, when Undersigned Counsel told Defendant to place a litigation hold and preserve all documents, tangible things, and electronically stored information ("ESI"). **Ex. 8**. Plaintiff's discovery requests sought evidence of electronic communications between Executives and Board Members during the relevant period. *See* **Ex. 9**. For example, Document Request No. 20 sought all communications, documents, and ESI, including emails and text messages, from Mr. Treacher that refer or relate to

Defendant's CEO search process. *Id.* Document Request No. 21 sought all electronic communications between Ms. Benedetto and Ms. Snow. *Id.*

Defendant originally responded that "Board members do not have Center for Family Health e-mail or phones." *Id.* That is immaterial because Defendant's Board Members are still under Defendant's control for discovery purposes. Moreover, Defendant maintains a directory of Board Member emails and cellphone numbers. **Ex. 10**. Defendant produced only two text messages involving Mr. Treacher, which displayed excerpts of separate conversations between (a) Ms. Benedetto and Mr. Treacher—and (b) Ms. Snow and Mr. Treacher. **Exs. 11** & **12**. Defendant admitted that all the text messages were "found on Ms. Benedetto's phone" because Mr. Treacher's phone was never investigated Ex. 9. Ms. Snow testified that she owned the cellphone displayed in Ex. 12. Ex. 2, at 56:18-58:3, 79:12-80:1. Ms. Benedetto's phone is Ex. 11.

On March 1, 2023, Plaintiff sent Defendant a letter regarding Defendant's deficient document production. **Ex. 13**. On March 6, 2023, Undersigned Counsel sent Defense Counsel an email stating, in relevant part:

> The Board members were on notice soon after [Plaintiff's] termination that there would be legal proceedings and that text message communications, including those made on board members' personal phones, might contain relevant information. Privacy concerns do not override the initial burden to preserve potentially relevant evidence.

**Ex. 14**. On March 7, 2023, Defendant supplemented discovery by shockingly asserting that Mr. Treacher and Mr. Hogwood "***did not save any emails or text messages***." **Ex. 15**. On March 8, Undersigned Counsel requested:

> "save" implies that the messages existed at one time and now do not. You will recall that on June 7, 2022 my office asked Defendant [to place a litigation hold.] Please advise us as to when Messrs. Treacher and Hogwood deleted what would have been highly relevant text messages from their phone.

**Ex. 16**. Plaintiff narrowed the scope of his document requests in good faith, but Defendant never addressed whether discoverable evidence was destroyed. **Ex. 17**.

However, deposition testimony revealed that Defendant spoliated evidence by neglecting to ensure that Board members preserved electronic communications related to the CEO search and Plaintiff's termination. In fact, Ms. Benedetto was the only deponent to testify that she was told to preserve evidence. Ms. Snow could not "remember." Every Board Member ***testified that they were never told to preserve evidence***. Ex. 1, at 77:11-24, 79:4-24; Ex. 2, at 79:21-80:5; Ex. 3, at 58:19-59:17; Ex. 4, at 108:1-9, 115:18-21; Ex. 5, at, 119:19-120:8; Ex. 6, at 102:14-103:20; Ex. 7, at 31:4-24. ***Board members admitted one-by-one that they deleted relevant emails and text messages regarding the search process and Plaintiff's termination.*** Ex. 1, at 77:11-80:2; Ex. 4, at 113:22-115:21; Ex. 5, at 119:19-121:13; Ex. 6, at 102:14-103:20. ***Board members shockingly testified that the first time Defense Counsel asked for any electronic communications in their possession was in April***

***and May 2023***—a year into litigation, months after Plaintiff's discovery requests, and only after Plaintiff alleged that Defendant spoliated evidence. Ex. 1, at 77:11-80:2; Ex. 4, at 113:22-115:21; Ex. 5, at 119:19-121:13; Ex. 6, at 102:14-103:20. ***Mr. Hilleary was never asked for evidence in his possession***. Ex. 6, 102:14-103:20.

Accordingly, Defendant breached its duty to take reasonable measures to ensure that its witnesses preserved relevant ESI, and never told those witnesses not to delete evidence. *See John B. v. Goetz*, 879 F. Supp. 2d 787, 872-873 (M.D. Tenn. 2010) (observing default judgment against the defendant is appropriate because "counsel (1) never gave adequate instructions to their clients about the clients' overall discovery obligations, including what constitutes a 'document'; (2) knew the Union to have no document retention or filing systems and yet never implemented a systematic procedure for document production or for retention of documents, including electronic documents; (3) delegated document production to a layperson who was not instructed by counsel that a document included a draft or other nonidentical copy, a computer file and an e-mail; and (5) failed to ask important witnesses for documents until the night before their depositions and, instead, made repeated, baseless representations that all documents had been produced.")

## II. TREACHER DESTROYED ELECTRONIC COMMUNICATIONS WITH BENEDETTO AND SNOW.

Ms. Benedetto admits that Mr. Treacher is the only Search Committee member she spoke to about the CEO search, making him this matter's most critical

witness. Ex. 3, at 55:15-56:4. Mr. Treacher updated Ms. Benedetto about the CEO search process during the month of April 2022. Ex. 11. Mr. Treacher texted Ms. Benedetto, "I think it might be better if I quit this committee and tear them apart at the board level," and "Just received a response that [Ms. Snow] was not included in the top candidates . . . I responded that I was disappointed in the process and their insertion of their opinion in the selection. Finally, I said that I was considering recommending to the Board that we start again." *Id.* However, that is all the evidence from Mr. Treacher's phone and email that was produced, and do not capture the conversations between Ms. Benedetto and Mr. Treacher regarding the CEO search process. *Id.* And on May 10, 2023 at 8:52 a.m., three days before the search process was canceled, Ms. Snow texted Mr. Treacher and asked him to call because, "[the Leadership Team] just got Terry L resume" and "[m]uch of the information for the Center is not based in fact." Ex. 12; Ex. 2, at 56:18-58:3; 59:10-12. Ms. Snow singled out Plaintiff, not other candidates. Ex. 12. When confronted with the text messages, Mr. Treacher vehemently denied that he was the "Randy" / "RT" contact name that is displayed in the pictures of Ms. Benedetto's phone—he actually feigned no memory of the messages. Ex. 1, at 70:1-85:20. Mr. Treacher ***admits that he deleted all messages from his phone because he was never advised to preserve evidence***. *Id.*, at 77:11-80:2. That is spoliation, plain and simple.

Plaintiff asked Defendant to produce the remaining text messages in Ms. Benedetto's possession, but Defendant did not respond. **Ex. 18**. Moreover, Ms. Snow quit her employment at Defendant in September 2022, after this lawsuit was filed, and gave her cell phone to Defendant's IT for it to be wiped clean. Ex. 2, at 14:8-12, 79:14-20. Again, spoliation plain and simple.

## III. DEFENDANT PATENTLY LIED ABOUT SNOW'S INVOLVEMENT IN PLAINTIFF'S TERMINATION AND PRODUCED A DISTORTED "SMOKING GUN" EMAIL TO CONCEAL EVIDENCE.

Defendant supplemented discovery with a dishonest Interrogatory answer regarding Ms. Snow's involvement in Plaintiff's termination. Plaintiff's Interrogatory No. 13 asked Defendant to identify "every individual that had input into Plaintiff's termination." **Ex. 19**. Defendant's original January 23, 2023 interrogatory answer identified Michelle Lutz, Mr. Hogwood, and the entire Leadership Team, including Ms. Snow. *Id*. Mr. Hogwood's deposition was held on May 22, 2023, and he testified that the only input he had into Plaintiff's termination is that he "disagreed with it" and told Ms. Benedetto and Ms. Snow, "There's no reason to do this, at all. You are going to hurt the center." Ex. 4, at 110:25-112:11. Further, Mr. Hogwood testified that he was led to believe that Plaintiff's termination "was a decision of [Ms. Benedetto] and [Ms. Snow]," and Mr. Hogwood did not know that other members of the Leadership Team "had any influence in [Plaintiff's] termination." *Id*., at 110:25-112:11. Per Mr. Hogwood, Ms. Snow was "adamant in

her vocabulary," "she was aggressive" and "passionate" about terminating Plaintiff— "[Ms. Benedetto] did not talk much, at all. 90 percent of the talking to me was from [Ms. Snow]." *Id.*, at 99:12-100:12.

On May 30, 2023, not long after Mr. Hogwood's deposition, Defendant supplemented its Response to Interrogatory No. 13 to withdraw Ms. Snow's name from the list of individuals who had input into Plaintiff's termination. Ex. 19. During Ms. Sow's deposition on June 1, 2023, she falsely denied having any involvement in Plaintiff's termination. Ex. 2, at 70:21-71:6. Ms. Snow claimed that she did not "want to be involved in it." *Id.*, at 70:21-71:6. That was a bold-faced lie. ***Ms. Snow's electronic communications expose that she was very involved in Plaintiff's termination***. We know this because Ms. Snow received a draft copy of Plaintiff's termination paperwork the day before it was scheduled to happen. **Ex. 20**. Ms. Benedetto's written timeline indicates that she met with Defense Counsel on May 13, 2022, where "[Ms. Berkery] discussed document and process" with the plan to "move forward" with the termination on May 16. **Ex. 21**. On May 15, 2022 at 2:34 p.m., Ms. Snow was the *only* recipient of an email from Ms. Benedetto with the subject line "draft discussion summary." Ex. 20. The email, as produced, appears to be deliberately manipulated so that the content of the message is unreadable, thereby concealing discoverable evidence. *Id.* Ms. Snow agreed with Undersigned Counsel at her deposition that the document seems to be "cut off" and

is not "how e-mails are typically sent." Ex. 2, at 74:2-9. The draft termination paperwork sent to Ms. Snow on May 15 is substantively different than the final termination paperwork Plaintiff received. *Id*, at 75:11-15. ***Plaintiff's termination paperwork was finalized after Ms. Snow received it.*** Ms. Snow could not "remember" whether she edited or provided any feedback on the termination paperwork. *Id*., at 74:20-22, 75:1-76:8. Similarly, Ms. Snow could not "remember" if she sent any additional emails or text messages to anyone else regarding Plaintiff and the search process. *Id*., at 79:21-80:14. Accordingly, Defendant's duplicity has given this Court every reason to order sanctions.

## IV. SANCTIONS ARE WARRANTED.

"When a party destroys evidence in anticipation of litigation, the trial court may impose sanctions for spoliation." *Applebaum v. Target Corp*., 831 F.3d 740, 744 (6th Cir. 2016). "The severity of sanction issued is determined on a case-by-case basis, depending in part on the spoliating party's level of culpability." *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1070 (6th Cir. 2014). Due to the ten-page limit on this brief, Plaintiff is restricted in its analysis of what sanctions are appropriate. Plaintiff therefore requests that this Court consider the following adverse inference jury instruction as a potential remedy for Defendant's irreparable failure to preserve evidence and willingness to destroy it.

1. Ms. Benedetto destroyed communications between her and Mr. Treacher regarding Defendant's CEO search process. Had she done so, the communications would have demonstrated a discriminatory motive to not hire Plaintiff. *See* Ex. 11 for support.

2. Ms. Benedetto destroyed communications between her and Mr. Treacher regarding Defendant's CEO search process. Had she done so, the communications would have demonstrated that she discussed Plaintiff's termination with Ms. Benedetto. *See* Ex. 11 for support.

3. Mr. Treacher destroyed communications between him and Ms. Benedetto regarding Defendant's CEO search. Had he not done so, the communications would show that he and Ms. Benedetto discussed Plaintiff's CEO candidacy. *See* Ex. 11 for support.

4. Mr. Treacher destroyed communications between him and Ms. Benedetto regarding Plaintiff's termination. Had he not done so, the communications would show that he and Ms. Benedetto demonstrated discriminatory reasons to terminate Plaintiff. *See* Ex. 11 for support.

5. Defendant destroyed communications between Mr. Treacher and Ms. Snow to conceal evidence that Mr. Treacher discussed Plaintiff's termination with Ms. Snow. *See* Ex. 12 for support.

6. Defendant destroyed communications between Mr. Treacher and Ms. Snow to conceal evidence that Mr. Treacher provided updates to Ms. Snow about the CEO search process. *See* Ex. 12 for support.

7. Mr. Treacher destroyed communications between him and Ms. Snow regarding Plaintiff's termination that would have demonstrated discriminatory reasons to terminate Plaintiff. *See* Ex. 12 for support.

8. Defendant produced an illegible copy of the May 15, 2022 "draft discussion summary" email to conceal evidence that Ms. Benedetto and Ms. Snow discussed terminating Plaintiff's employment. *See* Ex. 20 for support.

9. An entry of default judgment in favor of Plaintiff.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

Dated: June 26, 2023

**PROOF OF SERVICE**

I hereby certify that on June 26, 2023, I electronically filed the foregoing Motion for Sanctions Based on Defendant's Spoliation of Evidence and Exhibits with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

Dated: June 26, 2023

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)